UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

THE TRAVELERS INDEMNITY                                    Plaintiffs
COMPANY ET AL.

v.                                          Civil Action No. 3:23-cv-418-RGJ

LA BESTIA CONSTRUCTION LIMITED                             Defendants
LIABILITY COMPANY ET AL.

* * * * *

**MEMORANDUM OPINION & ORDER**

Plaintiffs Travelers Indemnity Company ("Travelers Indemnity") and Builders Mutual Insurance Company ("Builders Mutual") (collectively "Plaintiffs") filed their second amended complaint against Defendants La Bestia Construction Limited Liability Company ("La Bestia Kentucky") and La Bestia Construction, LLC ("La Bestia Virginia") (collectively "La Bestia"). [DE 22]. In Count 1 of Plaintiffs' second amended complaint, Travelers Indemnity alleged abuse of process by La Bestia Kentucky and La Bestia Virginia. [*Id.* at 552]. In Count 2, Builders Mutual alleged breach of contract against La Bestia Virginia. [*Id.* at 554]. La Bestia Kentucky then filed a third-party complaint against John R. Wilson and his firm Wilson & Wilson (collectively "Wilson") asserting that Wilson should indemnify La Bestia if Travelers Indemnity succeeds on Count 1 of the second amended complaint. [DE 36].

Wilson now moves for summary judgment on Count 1 of the second amended complaint [DE 66], and La Bestia Kentucky moves for partial summary judgment on the issue of liability for the third-party claims [DE 68]. Travelers Indemnity also moves for leave to file a sur-reply. [DE 70]. For the reasons set forth below, the Court **DENIES** Travelers Indemnity's motion for leave to file a sur-reply [DE 70], **GRANTS** Wilson's motion for summary judgment on Count 1 [DE

65], **DISMISSES WITHOUT PREJUDICE** Counts 1 and 2 of La Bestia's third-party complaint [DE 36], and **DENIES AS MOOT** La Bestia's motion for partial summary judgment [DE 68].

## I.    BACKGROUND

A.    The Parties

The complex facts of this case require an initial overview of the various entities and parties involved. The Defendant and third-party Plaintiff in this case, La Bestia Kentucky, is a Kentucky limited liability corporation that provides roofing and related construction services. [DE 68-1 at 1265-66]. Antonio Trejo Garcia ("Garcia"), the owner and sole member of La Bestia Kentucky, formerly lived in Virginia, where he owned La Bestia Construction LLC ("La Bestia Virginia"). [DE 68-2, Garcia Aff., at 1277]. Garcia moved to Kentucky in June 2019, formed La Bestia Kentucky, and allowed the Virginia Secretary of State to revoke the charter of La Bestia Virginia given that it was no longer in use. [*Id.* at 1278]. Garcia engaged a Virginia corporate services company, A.M. Multi Services, Inc. (AMMSI) to procure commercial liability and workers compensation insurance for La Bestia Virginia, and later, for La Bestia Kentucky. [DE 68-1 at 1266]. Both La Bestia entities paid AMMSI premiums for their insurance coverages. [*Id.*].

In March 2021, La Bestia Kentucky entered into a subcontract with R&B Roofing and Remodeling ("R&B") for a roof replacement at a car dealership in Louisville, Kentucky. [*Id.*]. After a rainstorm caused water damage to the premises, the dealership filed a lawsuit against R&B and La Bestia Kentucky, who in turn submitted a claim under its commercial liability policy it believed it had obtained through AMMSI. [*Id.*]. After submitting its claim, La Bestia Kentucky learned that AMMSI had not actually maintained the commercial liability and workers compensation policies, despite collecting premiums and providing certificates of insurance. [*Id.* at 1267]. Garcia then retained attorney John R. Wilson and his firm Wilson & Wilson Attorneys at

Law, PLLC (collectively, "Wilson"), the third-party Defendants, to pursue La Bestia Kentucky's rights in the matter. [*Id.*]. On behalf of La Bestia Kentucky, Wilson filed a lawsuit in the Jefferson Circuit Court, detailed below. [*Id.*].

Plaintiff Travelers Indemnity is an insurance company based in Connecticut that acts as a servicing carrier for other insurance companies. [DE 22 at 547]. Relevant to this case, Travelers Indemnity provided underwriting services for carriers of the assigned risk plan of Virginia ("Virginia ARP"). [DE 67 at 1241; DE 67-1, Balady Aff. at 1248]. Specifically, Travelers Indemnity provided underwriting services for Continental Casualty Company ("CNA") and Builders Mutual, both of whom issued workers compensation policies, but not general liability policies, to La Bestia Virginia under the Virginia ARP. [DE 22 at 550; DE 67-1 at 1248].[1] Other than acting as a servicing carrier for companies that issued policies to La Bestia Virginia, Travelers Indemnity had no direct relationship with La Bestia Virginia or La Bestia Kentucky. [DE 22 at 550; DE 67-1 at 1248].

B.    State Court Litigation

Garcia provided Wilson with "copies of all the documents and communications [he] had that related to the dispute." [DE 68-2 at 1279]. In Garcia's affidavit, he notes that "[s]ome of the paperwork [he provided to Wilson] referred to an entity named 'Travelers,'" which led Wilson "to make various inquiries about the matter to The Travelers Indemnity Company," eventually informing Garcia "that he felt he was getting the runaround by Travelers . . . [and] he was going to file suit." [*Id.* at 1279]. Although Travelers Indemnity in fact had no involvement with La Bestia

---

[1] Builders Mutual, the other Plaintiff in this case, alleges that La Bestia Virginia breached the terms of the policy by refusing to cooperate with a requested audit. [DE 22 at 552]. This claim is not addressed in either motion for summary judgment, and a Clerk's entry of default has been entered against La Bestia Virginia. [DE 25]. This Opinion thus does not address Count 2 of the second amended complaint other than in regard to Travelers Indemnity's assertion of diversity jurisdiction.

other than acting as a servicing carrier for companies that provided workers compensation policies to La Bestia, Wilson filed a lawsuit in state court against AMMSI and "Travelers Insurance Company," styled *La Bestia Construction, LLC v. A.M. Multi Services, Inc. and Travelers Insurance Company*, No. 22-CI-003299. [DE 68-1 at 1267; DE 68-3, State Ct. Compl.].

The state court complaint alleged that La Bestia was led to believe by AMMSI that "workers' compensation and liability insurance coverage was provided by Travelers" and that "Travelers negligently failed to validly notify [La Bestia of] cancellation of coverage." [DE 66-1 at 1197–98]. Wilson prepared the summons issued to "Travelers Insurance Company" and addressed the summons for delivery to 6400 C Street, Cedar Rapids, Iowa 52499. [DE 66 at 1176]. However, Wilson admits that "Travelers was not the correct party and does not maintain its office at [this] address in Iowa. Instead, the intended defendant was Travelers Indemnity which has its office in Hartford, Connecticut." [*Id.*]. The Iowa address included on the summons was in fact the address of Transamerica Insurance Company, which had no connection to the litigation. [*Id.*]. The summons was returned as undelivered to the secretary of state, who thereby notified Wilson of the failed delivery. [*Id.*; DE 68-7]. Without any notice of the lawsuit, Travelers Indemnity did not respond to the action, and Wilson filed a motion for default judgment. [DE 66 at 1176-77]. On July 25, 2023, Jefferson Circuit Court entered default judgment against "Travelers Insurance" and later entered a final judgment awarding "La Bestia Construction, LLC" $127,000 for general damages against "Travelers Insurance Company." [*Id.* at 1177; DE 22-1 at 557].

Several months later, "for various reasons," Garcia terminated Wilson's engagement, found substitute counsel, and on February 4, 2023, directed Wilson to transfer the file to present counsel. [DE 68-2 at 1280]. Wilson did not complete the file transfer until September 1, 2023. [*Id.*]. In the meantime, present counsel "began making inquiries to [Travelers Indemnity] to try to

get more information about the underlying dispute and to find out if [Travelers Indemnity] knew anything about the default judgment." [*Id.* at 1280]. As part of these inquiries, Garcia's counsel informally provided to Travelers Indemnity copies of the default judgment and final judgment obtained against "Travelers Insurance Company." [DE 68-6 at 1290–91]. Travelers Indemnity maintains in its complaint that La Bestia's "informal notice" of the judgments constituted an attempt to recover on the judgments. [DE 22 at 550]. Accordingly, on July 28, 2023, counsel for Travelers Indemnity sent a letter to Garcia's counsel noting several errors from the state court action, including: (1) the misnaming of the Travelers entity; (2) the failure to properly serve Travelers Indemnity; and (3) the erroneous description of Travelers Indemnity's role in the fraud perpetrated by AMMSI, namely, the implication that Travelers Indemnity served as a general liability insurance carrier for La Bestia, when in reality it merely served as the underwriter for a worker's compensation insurance policy issued by Builders Mutual. [*Id.*]. As such, Traveler's counsel demanded that La Bestia Kentucky take measures to set aside the default judgment and final judgment. [*Id.* at 1292].

Travelers Indemnity maintains that after receipt of the letter, "La Bestia refused to set aside the Default Judgment and Final Judgment." [DE 22 at 550]. Consequently, Travelers Indemnity filed its first complaint in this Court on August 10, 2023. [DE 1].  La Bestia states that its present counsel finally received Wilson's file on September 1, 2023, and after fully reviewing the matter, agreed that the portions of the state court judgments against "Travelers Insurance Company" should be set aside. [DE 68-1 at 1269; DE 68-2 at 1281]. The Jefferson Circuit Court therefore entered an agreed order setting aside the default judgment and final judgment on September 20, 2023. [DE 68-8].

C.    <u>Present Litigation</u>

On October 23, 2023, Travelers Indemnity and Builders Mutual filed their second amended complaint against "La Bestia Construction Limited Liability Company" (La Bestia Kentucky) and "La Bestia Construction, LLC" (La Bestia Virginia), with Travelers Indemnity asserting abuse of process against "La Bestia Kentucky and/or La Bestia Virginia" and Builders Mutual asserting breach of contract against La Bestia Virginia. [DE 22]. Travelers Indemnity alleges that, as a result of La Bestia's improper service and failure to remediate the mistake, it suffered damages including the expense of defending the litigation and prosecuting this action. [DE 22 at 554]. It thus seeks $150,000 in compensatory damages and $50,000 in punitive damages. [*Id.* at 555]. La Bestia Kentucky answered, [DE 17], while La Bestia Virginia—no longer in existence—did not respond. Accordingly, the clerk entered a default against La Bestia Virginia. [DE 25].[2]

In turn, La Bestia Kentucky filed a third-party complaint against Wilson asserting breach of contract and breach of professional obligations. [DE 36 at 822]. La Bestia Kentucky states that

> [s]hould Travelers Indemnity be granted any relief in the case, at bar, due to the failure of Wilson to meet his [contractual and professional] obligations as counsel for La Bestia, La Bestia (i) is entitled to be fully indemnified by Wilson, (ii) is entitled to a refund of all attorneys' fees paid to Wilson, (iii) is entitled to recover from Wilson its attorneys' fees and expenses incurred in connection with this action, and (iv) is entitled to judgment against Wilson therefore.

[DE 22 at 553–54]. In response, Wilson filed a motion for summary judgment seeking dismissal of Count 1 of Travelers Indemnity's second amended complaint and La Bestia's third-party complaint. [DE 65; DE 66].[3] Travelers Indemnity filed a response to Wilson's motion [DE 67], and in conjunction with its response filed supplemental disclosures that included a computation of

---

[2] Plaintiffs have not yet filed a motion for default judgment with respect to the claim against La Bestia Virginia.

[3] Wilson attacks Travelers Indemnity's underlying claims directly pursuant to Federal Rule of Civil Procedure 14(a)(2)(C), which allows a third-party defendant to "assert against the plaintiff any defense that the third-party plaintiff has to the plaintiff's claim."

attorney's fees, which at the time totaled $25,845.18. [DE 67-4]. La Bestia filed its own motion for partial summary judgment against Wilson with respect to Counts 1 and 2 of its third-party complaint. [DE 68; DE 68-1]. That is, La Bestia asks the Court to grant summary judgment only with respect to its third-party complaint and the issue of Wilson's liability. Wilson, in turn, filed a reply to Travelers Indemnity combined with a response to La Bestia's motion for summary judgment. [DE 69]. Wilson's reply noted that Travelers Indemnity's supplemental disclosures were untimely, but Wilson nonetheless relied on the attorney's fees computation listed in the supplemental disclosures to argue that Travelers Indemnity fails to meet the $75,000 amount-in-controversy requirement for diversity jurisdiction. [*Id.* at 1322].

Travelers Indemnity then filed a motion for leave to file a sur-reply, arguing that Wilson's assertion that the supplemental disclosures were untimely amounted to a "new issue" that should afford Travelers Indemnity leave to file a sur-reply. [DE 70 at 1334; DE 70-1 at 1337].

## II.    MOTION FOR LEAVE TO FILE SUR-REPLY

Because Travelers Indemnity's motion for leave to file a sur-reply [DE 70] asks the Court to consider additional briefing in ruling on Wilson's motion for summary judgment, the Court will address it first.

Whether to permit a party to file a sur-reply is a matter left to the trial court's discretion. *Key v. Shelby Cnty.*, 551 F. App'x 262, 264 (6th Cir. 2014) (citing *Eng'g & Mfg. Servs., LLC v. Ashton*, 387 F. App'x 575, 583 (6th Cir. 2010); *Tanielian v. DaimlerChrysler Corp.*, 108 F. App'x 386, 387 (6th Cir. 2004)). "Although the Federal Rules of Civil Procedure do not expressly permit the filing of sur-replies, such filings may be allowed in the appropriate circumstances, especially '[w]hen new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated.'" *Seay v. Tennessee Valley Auth.*, 339 F.3d 454,

481 (6th Cir. 2003). "As many courts have noted, '[s]ur-replies. . . are highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc*., 875 F. Supp. 2d 791, 797 (W.D. Tenn. 2012) (quoting *In re Enron Corp*. Sec., 465 F. Supp. 2d 687, 691 n.4 (S.D. Tex. 2006)) (additional citation omitted). "The Sixth Circuit has held that a district court does not abuse its discretion in denying leave to file a sur-reply where the opposing party's reply did not raise any new legal arguments or introduce new evidence." *Id*.; *see, e.g., Key*, 551 F. App'x at 265 (holding that district court's denial of motion to file sur-reply was not abuse of discretion due to lack of new arguments raised in reply and six-month delay between filing of reply and motion for sur-reply).

In its response to Wilson's motion for summary judgment, Travelers Indemnity referred to attached supplemental disclosures, which included its current attorney's fees of $25,845.18. [DE 67 at 1243]. Travelers Indemnity added these disclosures in response to Wilson's argument that Travelers Indemnity failed to satisfy the $75,000 jurisdictional threshold. [*Id.*]. In reply, Wilson then noted that:

> Travelers' Supplemental Disclosure Statement, tendered on June 30, 2025, states a current damages quantification of $25,845.18. Notwithstanding the fact this Court's September 5, 2024 Amended Scheduling Order required Travelers to submit such supplemental disclosure by December 30, 2024, it has now acknowledged that any damages fail to exceed the $75,000.00 jurisdictional threshold imposed by 28 U.S.C. § 1332. That fact alone is a basis for summarily dismissing both Travelers' claims and La Bestia Kentucky's third-party indemnity claims with prejudice.

[DE 69 at 1322 (citations omitted)]. Travelers Indemnity in turn filed a motion for leave to file a sur-reply, arguing that Wilson raised a new issue: "the timeliness of Travelers' Supplemental Initial Disclosures." [DE 70 at 1334]. In the proposed sur-reply, Travelers Indemnity further asserts that "Mr. Wilson suggests that Travelers' damages do not meet the $75,000.00 threshold for diversity jurisdiction because Travelers filed its supplemental disclosures after the December

30, 2024, deadline contained in the Amended Scheduling Order." [DE 70-1 at 1336]. However, this misstates the substance of Wilson's reply. Wilson noted that Travelers Indemnity's disclosures were filed late but did not challenge the admission of those disclosures. In fact, Wilson used those same supplemental disclosures to argue that Travelers Indemnity's damages amounted to only $25,845.18 and therefore that it could not satisfy the $75,000 jurisdictional requirement. [DE 69 at 1322]. In other words, Wilson did not raise any "new legal argument" regarding the timeliness of the supplemental disclosures. Moreover, Wilson's argument that the Court lacks jurisdiction because Travelers Indemnity has not satisfied the $75,000 amount-in-controversy requirement is not a new argument—this was raised in Wilson's initial motion for summary judgment. [DE 66 at 1190]. In short, Wilson's reply did not raise any new legal argument or introduce any new evidence, so a sur-reply is not appropriate. *Key*, 551 F. App'x at 265.

Accordingly, Travelers Indemnity's motion for leave to file a sur-reply is **DENIED**. [DE 70].

### III.    JURISDICTION

Wilson asserts in its motion for summary judgment that Travelers Indemnity cannot show damages sufficient to satisfy the $75,000 threshold required to invoke diversity jurisdiction. [DE 66 at 1190]. Because this argument challenges the Court's jurisdiction, and therefore, the Court's ability to rule on the motions for summary judgment, the Court addresses it first.

Under Count 1 of the second amended complaint, Travelers Indemnity states that as a result of La Bestia's abuse of process, Travelers Indemnity "suffered damages including, but not limited to, the expense of defending the Litigation and prosecuting this action, in excess of $75,000." [DE 22 at 553]. Under Count 2, Builders Mutual asserts that as a result of La Bestia Virginia's breach of the insurance policy, Builders Mutual "suffered loss of premiums related to the arguable risk

that the Builders Mutual Policy was exposed to during the policy period." [*Id.* at 554]. In their prayer for relief, Plaintiffs ask that "[j]udgment be entered against the Defendants in the amount of at least $150,000.00 for compensatory damages and $50,000.00 in punitive damages," and they request attorney's fees. [DE 22 at 555]. The prayer for relief does not specify how those damages should be apportioned against the Defendants; that is, it does not separate out the damages owed to Travelers Indemnity pursuant to La Bestia's alleged abuse of process and those owed to Builders Mutual pursuant to La Bestia Virginia's alleged breach of contract. Further, in its response to Wilson's motion for summary judgment, Travelers Indemnity clarified that its "fee claim alone totals $25,845.18," but suggested that the $75,000 threshold is reached through its request for punitive damages and through Builders Mutual's breach of contract claim. [DE 67 at 1243–44]. As support for this argument, Travelers Indemnity attached supplemental disclosures stating that its current fee total amounted to $25,848.18. [DE 67-4]. Wilson maintains that because Travelers Indemnity is "seeking to recover the expense of defending the litigation and prosecuting this action," [DE 22 at 554], it is therefore seeking attorney's fees as damages. [DE 66 at 1190-91]. Wilson argues that Kentucky law does not allow juries to consider an award of attorney's fees as a form of punitive damages, nor does it consider attorney's fees compensatory damages.

For purposes of determining whether the $75,000 jurisdictional threshold has been met under 28 U.S.C. § 1332, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Kovacs v. Chesley*, 406 F.3d 393, 395 (6th Cir. 2005) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). "A district court should consider the *amount alleged in a complaint* and should not dismiss a complaint for lack of subject matter jurisdiction 'unless it appears to a *legal certainty* that the plaintiff in good faith cannot claim the jurisdictional amount.'" *Massachusetts Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416 (6th Cir. 1996)

(emphasis added) (quoting *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990)). Where a plaintiff makes a claim for punitive damages, such damages should be included in the amount in controversy calculation "unless it appears to a legal certainty that such damages cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001). When an action involves more than one plaintiff, the plaintiffs' claims cannot be aggregated to satisfy the jurisdictional amount requirement unless the plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest."  *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (quoting *Snyder v. Harris*, 394 U.S. 332, 335 (1969)); *see also Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983).

At the outset, Travelers Indemnity's apparent attempt to use Builders Mutual's breach of contract claim against La Bestia to meet the jurisdictional amount requirement is unavailing. The two Plaintiffs appear to bring entirely separate claims arising out of separate transactions. While Travelers Indemnity asserts abuse of process arising from La Bestia's failure to properly serve process in the state court litigation, Builders Mutual asserts breach of contract pursuant to La Bestia's alleged refusal to participate in an audit that was required by an insurance policy. The parties certainly do not "unite to enforce a single title or right," so their claims may not be aggregated. *See Everett*, 460 F.3d at 822. Moreover, even if Builders Mutual's claim against La Bestia independently satisfies the requirements of diversity jurisdiction, this does not automatically confer jurisdiction over Travelers Indemnity's unrelated claim just because it was brought in the same action. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 557–58 (2005) (noting that, in a diversity action in which one plaintiff has met the jurisdictional minimum, the court may exercise supplemental jurisdiction over claims by other plaintiffs, but only if they are "so related . . . that they form part of the same case or controversy"). Thus,

Travelers Indemnity's claim against La Bestia must be assessed independently to determine if it meets the amount-in-controversy requirement.

In Plaintiffs' second amended complaint, their prayer for relief claims a combined $150,000 in compensatory damages and $50,000 in punitive damages against the Defendants. Additionally, within the cause of action for abuse of process, Travelers Indemnity asserts that it suffered damages in excess of $75,000. [DE 22 at 554]. Given that that sum claimed by the plaintiff controls and Travelers Indemnity claims greater than $75,000 in damages, the Court should only dismiss the complaint if it "appears to a legal certainty" that Travelers Indemnity cannot claim that amount. *See Matthews v. Storgion*, 174 F. App'x 980, 984 (6th Cir. 2006) (finding that the amount-in-controversy requirement was met when appellees alleged "damages in excess of $75,000.00").

Wilson sets forth several arguments as to why Travelers Indemnity cannot claim that amount. First, Wilson argues that Kentucky law does not allow juries to consider attorney's fees as a form of punitive damages. As support for this, Wilson cites *Mo-Jack Distributor, LLC v. Tamarak Snacks, LLC*, which "rejects the notion that a jury may consider attorney fees as an element of punitive damages." 476 S.W.3d 900, 909 (Ky. App. 2015). While this may be true, the second amended complaint's prayer for relief clearly requests (1) $150,000 in compensatory damages, (2) $50,000 in punitive damages, and (3) attorney's fees related to prosecuting this cause for abuse of process. [DE 22 at 555]. That is, Travelers Indemnity apparently seeks attorney fees for the present litigation *in addition to* its request for punitive damages, not as an element of punitive damages. Accordingly, *Mo-Jack*'s holding should not bar Travelers Indemnity from seeking punitive damages.

Second, Wilson argues that attorney's fees are not recoverable as compensatory damages under Kentucky law because they do not compensate the plaintiff for any wrong done by the

defendant. [DE 66 at 1191]. Wilson also asserts that "Kentucky courts do not permit a plaintiff to recover attorney fees as compensatory damages for an abuse of process claim" and, as support for this proposition, cites to *Sprint Communications Co., L.P. v. Leggett*, 307 S.W.3d 109 (KY 2010). *Leggett*'s brief discussion of damages states that "upon proper showing, exemplary or punitive damages are recoverable for abuse of process" and while "[g]enerally, attorney fees are not recoverable, [they] may be recovered after the successful defense of a condemnation proceeding when the trial court, in the exercise of its sound discretion, determines that the condemning authority acted in bad faith." *Id.* at 119. The Court does not read *Leggett* to broadly preclude an award of damages to compensate a party for expenses incurred in defending a claim brought pursuant to an abuse of process, however. In fact, numerous courts and authorities suggest that fees incurred in defending such a claim fall under the umbrella of compensatory damages, not attorney's fees:

> In an action for abuse of process, the plaintiff may recover whatever actual damage the plaintiff has suffered as a natural and probable consequence of the abuse. The natural and probable consequences of an abuse of process lawsuit include the costs incurred in successfully defending the charge; as such, *fees for defending such a lawsuit are considered compensatory damages, not attorney's fees.*

1 Am. Jur. 2d Abuse of Process § 30 (emphasis added); *see also Millennium Equity Holdings, LLC v. Mahlowitz*, 925 N.E.2d 513, 528 (Mass. 2010) (recognizing that the "natural and probable" consequences of an abuse of process lawsuit include the costs incurred in successfully defending the charge," so "fees for defending such a lawsuit are considered compensatory damages, not attorney fees"); *Zachair, Ltd. v. Driggs*, 762 A.2d 991, 1007 (Md. App. Ct. 2000) ("[W]here a civil suit has been brought through misuse of legal procedure, '[c]ounsel fees incurred in defending against the wrongful civil suit are prominent among items of recovery . . .'" (quoting W. Page Keeton, Prosser and Keeton on the Law of Torts § 120 at 895 (5th ed.1984)). When a "general

goal of compensatory damages in tort cases is to put the victim in the same position he would have been prior to the injury," the costs incurred to defend against an unjustified legal proceeding and judgment are more appropriately considered compensatory damages than attorney's fees. *See Schwartz v. Hasty*, 175 S.W.3d 621, 625 (Ky. App. 2005). While attorney's fees generally are not considered a form of compensatory damages, in the context of an abuse of process action, attorney's fees are more akin to medical expenses because they compensate for the tort itself, not the subsequent litigation.

Finally, in their reply in support of its motion for summary judgment, Wilson notes that Travelers Indemnity's supplemental disclosure statement states that its fees resulting from defending against the claim total only $25,845.18, and thus it has acknowledged that its damages are below the jurisdictional threshold. [DE 69 at 1321-22]. Yet, this number does not include Travelers Indemnity's claimed punitive damages—$50,000. While the prayer for relief does not explain under which cause of action that Plaintiffs sought $50,000, Kentucky law generally does not allow punitive damages for breach of contract claims but does allow punitive damages for abuse of process claims. *Compare Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018) ("Kentucky common law has long accepted the general rule that punitive damages are not ordinarily recoverable for a breach of contract."), *with Leggett*, 307 S.W.3d at 119 ("[E]xemplary or punitive damages are recoverable for abuse of process."). Accordingly, the $50,000 in punitive damages requested by Plaintiffs must go to Travelers Indemnity's abuse of process claim against La Bestia. That $50,000, plus the $25,845.18 in fees, results in possible damages in excess of $75,000 for Travelers Indemnity's abuse of process claim. Consequently, it does not "appear[] to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount.'" *See Massachusetts Cas. Ins. Co.*, 88 F.3d at 416.

Because the amount alleged by Travelers Indemnity meets the jurisdictional threshold for the Court to exercise diversity jurisdiction under 28 U.S.C. § 1332, the Court finds that jurisdiction is proper and will now proceed to the merits of the motions for summary judgment.

## IV.    MOTIONS FOR SUMMARY JUDGMENT

Because Wilson directly moves to dismiss Travelers Indemnity's underlying claim for abuse of process, a ruling on Wilson's motion may dispose of Travelers Indemnity's claim altogether. Accordingly, the Court will first address the substance of Wilson's motion for summary judgment as to Count 1 of the second amended complaint and then La Bestia's motion for summary judgment as to Wilson's liability for the abuse of process.

A.    Standard

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by

15

"citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

B.    Wilson's Motion for Summary Judgment

In addition to the jurisdictional challenge, Wilson makes several arguments calling for summary judgment on Travelers Indemnity's abuse of process claim. First, Wilson asserts that Travelers Indemnity cannot properly assert a claim against the entity known as "La Bestia Kentucky" because "La Bestia Virginia (and not La Bestia Kentucky) was the plaintiff in the State Court Litigation." [DE 66 at 1183]. Second, Wilson argues that Travelers Indemnity lacks standing to assert an abuse of process claim because "Travelers Indemnity" was never actually the subject of the state court litigation. [*Id.* at 1185–87]. Finally, Wilson asserts that Travelers Indemnity cannot make out the elements of an abuse of process claim. [*Id.* at 1189–90]. The Court addresses each of these below.

1.    *Proper Plaintiff in State Court Litigation*

First, Wilson asserts that Travelers Indemnity cannot properly assert a claim against the entity known as "La Bestia Kentucky" because "La Bestia Virginia (and not La Bestia Kentucky)

was the plaintiff in the State Court Litigation." [DE 66 at 1183]. As support for this argument, Wilson points to the complaint from the state court action, which lists "La Bestia Construction, LLC" as the only plaintiff. [DE 66 at 1183; DE 66-1 at 1196]. Per records from the Virginia and Kentucky secretaries of state, "La Bestia Construction, LLC" is a Virginia entity while "La Bestia Construction Limited Liability Company" is a Kentucky entity. [DE 66-1 at 1228, 1231]. Because La Bestia Virginia was the purported party in the state court action, Wilson argues that La Bestia Kentucky—a separate entity—cannot be liable to Travelers Indemnity for abuse of process. [DE 66 at 1184]. Consequently, Wilson cannot be liable because La Bestia Virginia, the only entity that "may have liability to Travelers Indemnity for abuse of process," has not asserted a third-party claim against Wilson. [*Id.*].

Wilson relies solely on the face of the state court complaint and contends that because the state court complaint named the plaintiff as "La Bestia Construction, LLC" and not "La Bestia Construction Limited Liability Company," La Bestia Kentucky must not have been involved. Yet, there is other evidence suggesting that La Bestia Kentucky was the true plaintiff in the litigation. First, the state court complaint alleges that the plaintiff is a corporation "duly authorized to transact business in the Commonwealth of Kentucky" and it lists a Kentucky address underneath the plaintiff's name. [DE 66-1 at 1196–97]. Second, the complaint stated claims arising under the Kentucky Unfair Claims Settlement Practices Act and the Kentucky Insurance code, which suggests that the claim was made on behalf of a Kentucky entity engaged in business in Kentucky. [*Id.* at 1199]. Moreover, if the complaint were in fact filed on behalf of La Bestia Virginia, it would likely have described the plaintiff using the same language used to describe defendant AMMSI, another Virginia entity, referred to in the complaint as "a corporation authorized to do business in Virginia and has done and continues to do business in the Commonwealth of Kentucky." [*Id.*].

17

Finally, other materials in the record suggest that La Bestia *Kentucky* was the entity that performed the roofing work that gave rise to La Bestia's insurance claims, which then were the subject of the state court litigation. Garcia testified that after he moved to Kentucky in 2019, he allowed the Virginia Secretary to revoke the charter of the Virginia entity. [DE 68-1 at 1278]. He also testified that La Bestia Kentucky was the entity that entered into a subcontract to perform roofing work, became involved in an insurance dispute, and hired Wilson to pursue its legal rights. [*Id.* at 1279].

Accordingly, Wilson's first argument fails because there is a genuine dispute of material fact regarding whether La Bestia Virginia or La Bestia Kentucky was the plaintiff in the state court action. All told, the use of "La Bestia Construction, LLC" in the state court complaint may simply be another erroneous designation of a party by Wilson, and such an error should not be the basis on which Wilson escapes liability.

2.    *Standing*

Wilson next argues that Travelers Indemnity lacks standing to assert an abuse of process claim because "Travelers Indemnity" was never actually the subject of the state court litigation. [DE 66 at 1185–87]. That is, because the initial lawsuit incorrectly named the nonexistent "Travelers Insurance Company," Travelers Indemnity was not the party to which the offensive process was issued, and therefore, has not "suffered a concrete and particularized injury" giving rise to a claim. *See Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Travelers Indemnity responds that because La Bestia's intent was "to sue, default, and then execute on a judgment" against Travelers Indemnity, Travelers Indemnity was the target and victim of the abuse of process even if not technically named in the suit. [DE 67 at 1237].

Standing requirements under Kentucky law "mirror the standing requirements under the United States Constitution." *Pikeville v. Kentucky Concealed Carry Coal., Inc.*, 671 S.W.3d 258, 264 (Ky. 2023). Accordingly, the Kentucky Supreme Court has stated the test for standing as follows:

> [F]or a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability. In other words, "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." "[A] litigant must demonstrate that it has suffered a concrete and particularized injury that is either actual or imminent . . . ." "The injury must be . . . 'distinct and palpable,' and not 'abstract' or 'conjectural' or 'hypothetical.'" "The injury must be 'fairly' traceable to the challenged action, and relief from the injury must be 'likely' to follow from a favorable decision."

*Commonwealth Cabinet for Health & Fam. Servs., Dep't for Medicaid Servs. v. Sexton*, 566 S.W.3d 185, 196 (Ky. 2018) (footnotes omitted) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984); and then quoting *Massachusetts v. EPA*, 549 U.S. at 517). In order for an injury to be considered "concrete and particularized," it must be "real" and not "abstract," and the plaintiff "*personally* [must have] suffered some actual or threatened injury." *City of Pikeville v. Kentucky Concealed Carry Coal., Inc.*, 671 S.W.3d 258, 264 (Ky. 2023) (quoting *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x. 6, 8 (6th Cir. 2018)).

As Wilson acknowledges, Kentucky courts have not addressed the question of whether an entity who is not named in the underlying action can have standing to assert an abuse of process claim based on that action. As such, Wilson instead points to *Garland v. Brewer*, a federal case from the Eastern District of Kentucky, as support for the contention that a plaintiff lacks standing to sustain an abuse of process claim when the defendant did not initiate a judicial proceeding against him. No. 3:11-25-DCR, 2012 WL 1068737 (E.D. Ky. Mar. 29, 2012). That case, however, dealt with an *administrative* complaint filed with the Kentucky State Police. *Id.* at *2. No judicial

process was involved; rather, the plaintiff was given written notice of the administrative complaint filed against him. *Id.* The plaintiff could therefore not sustain an action for abuse of process because no *judicial* proceedings were instituted against him. *Id.* at *4. In other words, the plaintiff's claim failed not because he was not named in the underlying action, but because the underlying action was not a judicial proceeding. Wilson also relies on *Woodcox v. United States*, which, just like *Garland*, dismissed an abuse of process claim because the underlying action was an administrative proceeding instituted by the Department of Education, not because the plaintiff was not a party to the underlying action. 2018 WL 1832972, at 3 (W.D. Ky. Apr. 17, 2018).

Given that Wilson's cases are unhelpful and Kentucky courts have not addressed this particular issue, other state court opinions are instructive. Other courts have concluded that plaintiffs who were not formally listed as parties to the underlying action may nonetheless bring an abuse of process claim based on that action if they were the target and victim of the litigation. *See, e.g., Cruz v. Princeton Ins. Co.*, 925 A.2d 853 (Pa. Super. 2007) (allowing parents of minor to file abuse of process action even though they were not parties to the underlying medical malpractice action because "the petition's undeniable aim was the removal of [the parents] as [the minor's] guardians" and, thus, the parents were "the legal object of the petition"); *Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc.*, 343 N.E.2d 278, 284 (N.Y. 1975) (holding that a school district that was not listed as a party to the underlying judicial proceeding and that was not served process could bring an abuse of process claim because it was "the target and victim of the perversion of that process"); *Sands v. Living Word Fellowship*, 34 P.3d 955, 960 (Alaska 2001) (finding that church parishioner had standing to sue members of another church for abuse of process, even though he was not a party to the underlying suit, given that the lawsuit led to an injunction that enjoined parishioner's conduct). These cases stand for the

proposition that, in determining whether a party has standing to bring an abuse of process claim, the proper inquiry is whether the party was the intended target of the underlying action and whether it was injured by the abusive process. This proposition is consistent with the elements of a Kentucky abuse of process claim, which do not require that a plaintiff be specifically named in the underlying action. *See Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998) ("The essential elements of an action for abuse of process are (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding"). As a result, a plaintiff need not be listed as a party in the underlying action in order to have standing to assert an abuse of process claim based on that action.

In sum, Travelers Indemnity has alleged an actual concrete and particularized injury resulting from La Bestia's alleged misuse of process. Travelers Indemnity alleges that it suffered damages including the expense of defending against the state law judgment, and that these damages resulted from La Bestia's actions—filing the lawsuit against "Travelers Insurance Company," failing to properly serve Travelers Indemnity, securing a default judgment against "Travelers Insurance Company," and then expecting Travelers Indemnity to pay that judgment. The fact that Travelers Indemnity was not specifically named in the underlying action does not mean it did not suffer an injury as a result of that action. Consequently, Wilson's second argument also fails.

### 3.    *Elements of an Abuse of Process Claim*

Third, Wilson asserts that Travelers Indemnity cannot prove the elements of an abuse of process claim because "mistakenly identifying a defendant and mistakenly addressing a summons is not a wrongful use of process." [DE 66 at 1189–90]. Travelers Indemnity responds that La Bestia's filing of the lawsuit against a "Travelers Insurance Company" was a "willful act in using

process that was not proper in the regular conduct of the proceeding." [DE 67 at 1241]. Travelers Indemnity asserts that it had no relationship with La Bestia that would subject it to any legitimate litigation and that La Bestia's new counsel allegedly refused to set aside the default judgment when Travelers Indemnity informed him of the issue. [*Id.* at 1241].

Abuse of process consists of the "employment of legal process for some other purpose than that which it was intended by the law to effect." *Raine v. Drasin*, 621 S.W.2d 895, 902 (Ky. 1981), *abrogated in part by*, *Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016). To establish an abuse of process claim, a plaintiff must show "(1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Simpson*, 962 S.W.2d at 394 (citing *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765 (Ky. App. 1980)). Abuse of process requires "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process . . . and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion even though with bad intentions." *Id.* (citing W. Prosser, Handbook of the Law of Torts, Section 121 (4th ed.1971)). In other words, there is no claim for abuse of process "when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Griffin v. Jones*, 170 F. Supp. 3d 956, 971 (W.D. Ky. 2016) (quoting Restatement (Second) of Torts § 682 (1977)).

Thus, there is a distinction between an ill-motivated but proper use of process, and an *abuse* of process. An "ulterior purpose" for purposes of abuse of process typically involves an attempt to gain an advantage outside the proceeding. *See Simpson*, 962 S.W.2d at 394. The Kentucky Supreme Court has recognized that "[t]he usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or

to take some other action or refrain from it." *Leggett*, 307 S.W.3d at 117 (quoting Restatement (Second) of Torts, § 682). Accordingly, if there is no evidence that the defendant used the legal process to achieve something outside the scope of the proceedings, there is no proper claim for abuse of process. For example, in *George v. Lavit*, the Court of Appeals of Kentucky held that the plaintiff failed to allege an ulterior purpose in the underlying litigation when he alleged that opposing counsel engaged in disruptive conduct and violated procedural rules at trial for the purpose of obtaining a mistrial. No. 2005–CA–002233–MR., 2006 WL 3228616, at *3 (Ky. App. Nov. 9, 2006). The court noted that "even though a party acts with malevolent intentions," there is no claim for abuse of process if he has "done nothing more than carry out the legal process to its authorized conclusion." *Id.* Opposing counsel was attempting to "achieve a favorable result for his client through questionable means," but advancing a client's interest is a legitimate goal and thus not an "ulterior purpose." *Id.* By contrast, in *Garcia v. Whitaker*, the Kentucky Supreme Court held that the plaintiff submitted sufficient evidence of abuse of process to survive a motion for a directed verdict. 400 S.W.3d 270 (Ky. 2013). There, a car owner refused to pay a mechanic for repairs to his car, so the mechanic lawfully held the car as collateral. *Id.* at 273. The car owner then filed a criminal complaint that led to the mechanic's arrest and the owner's recovery of the car, and the mechanic later brought an abuse of process claim against the car owner. *Id.* The court reasoned that a jury could find that the car owner had an ulterior purpose for bringing suit; namely, to use the criminal complaint and resulting arrest to obtain his vehicle without compensating the mechanic. *Id.* at 277. There was also a "definite act not legitimate in the use of the process" because the car owner accompanied the arresting deputy to the mechanic's home to serve the arrest warrant, after which the car owner located the vehicle and regained possession. *Id.*

First, the record contains no evidence of an ulterior purpose by La Bestia or Wilson in filing the state court lawsuit. There is no evidence that the underlying action was brought to gain a collateral advantage outside the proceeding or to achieve a purpose other than that for which the process of filing a lawsuit was intended. Rather, the record reflects that the purpose of the initial proceedings was to pursue La Bestia's rights, but that La Bestia and Wilson made careless mistakes along the way. The state court complaint makes clear that La Bestia sought "actual, compensatory, incidental, consequential and punitive damages" for "Travelers Insurance Company's" alleged violation of the "Kentucky Unfair Claims Settlement Practices Act and the Kentucky Insurance Code." [DE 66-1 at 1198–99]. Wilson erroneously named "Travelers Insurance Company" as the defendant and then further erred by serving process on an unrelated insurance company. Yet, misidentifying a party and addressing a summons to the wrong party do not provide evidence of a purpose outside the scope of the proceedings. *Cf. Willis v. Parker*, 814 So.2d 857, 866–67 (Ala. 2001) (finding the defendant had not committed abuse of process in naming the "wrong defendant" in the underlying eviction action because the "direct result [the defendant] sought to achieve by his eviction action was eviction of his month-to-month tenant—a result authorized and intended by the eviction law," and the defendant did "nothing other than carry out the process to its authorized conclusion" by proceeding with the eviction action and later agreeing to dismiss the charge) (quoting *C.C. & J., Inc. v. Hagood*, 711 So.2d 947, 951 (Ala. 1998)).

Rather, the evidence suggests that Wilson saw "Travelers" mentioned in the insurance paperwork it was given by La Bestia and assumed that Travelers Indemnity was involved and therefore would be a proper party to sue. Garcia's affidavit notes that "[s]ome of the paperwork [he provided to Wilson] referred to an entity named 'Travelers,'" which led Wilson "to make various inquiries about the matter to The Travelers Indemnity Company," eventually informing

Garcia "that he felt he was getting the runaround by Travelers . . . [and] he was going to file suit." [DE 68-2 at 1279]. While this testimony suggests that Wilson misunderstood Travelers Indemnity's role in the matter, it does not suggest a motive other than to remedy the injury to La Bestia.

Travelers Indemnity has not pointed to any evidence that La Bestia or Wilson initiated the lawsuit as "coercion to obtain a collateral advantage . . ., such as the surrender of property on the payment of money, by the use of the process as a threat or a club." *Simpson*, 962 S.W.2d at 395 (internal quotation marks omitted) (quoting W. Prosser, Handbook of the Law of Torts, § 121 (4th ed. 1971)). Travelers Indemnity merely asserts that "La Bestia knew before filing the Litigation that Travelers' relationship was limited as only a servicing carrier," but fails to state why filing a lawsuit against a party one knows to be improper provides evidence of an ulterior purpose. An "ulterior purpose" requires evidence that the party intended to exploit the legal process to obtain an "otherwise unobtainable result," and evidence that a party filed suit against the wrong defendant does not rise to that level. *Coniglio v. CBC Servs., Inc.*, No. 5:12CV1773, 2013 WL 3776179, at *9 (N.D. Ohio July 16, 2013) (noting that although "Plaintiffs deliberately named the wrong party when suit was initiated," those actions do not give rise to an abuse of process claim because the plaintiffs "sought wholly permissible relief, albeit in the absence of the real party in interest"). In fact, Travelers Indemnity fails to state what La Bestia's supposed ulterior purpose is. *See Bickley v. Dish Networks LLC*, No. 3:10-CV-00678-H, 2012 WL 5362425, at *2 (W.D. Ky. Oct. 31, 2012), *aff'd*, 751 F.3d 724 (6th Cir. 2014) (dismissing abuse of process claim when plaintiff did "not intimate to the Court what ulterior purpose [defendant] maintained in pursuing [the] action"). "Merely because a lawsuit is groundless is not sufficient to state a claim for abuse of process." *Dearborn Sav. Bank v. Hall*, No. 2015-CA-000077-MR, 2017 WL 4570585, at *5 (Ky. App. Oct.

13, 2017). Accordingly, Wilson's misidentification of the defendant and improper service, though egregious mistakes, fail to evince "an objective not legitimate in the use of the process." *Simpson*, 962 S.W.2d at 394; *see also McIlwain v. Dodd*, No. 3:21-cv-406-RGJ, 2022 WL 492986, at *11 (W.D. Ky. Feb. 17, 2022) ("Even if [the defendant] had bad motives and made false representations, [she] is not liable for abuse of process because she did not use the process for some purpose outside the criminal process.").

The record is also devoid of any willful act by La Bestia or Wilson that was improper in the regular conduct of the proceeding. Travelers Indemnity argues that La Bestia abused process when its new attorney refused to set aside the default judgment, requiring Travelers to do so and file this suit. [DE 67 at 1241]. However, Travelers Indemnity cites to no evidence in the record that supports its contention that La Bestia's new counsel refused to set aside the default judgment. [*Id.*]. If anything, the record establishes that La Bestia's new counsel *did* set aside judgment after reviewing the materials provided by Wilson. On July 28, 2023, counsel for Travelers Indemnity sent a letter to La Bestia demanding that it take measures to set aside the state court default judgment and final judgement. [DE 68-6 at 1292]. La Bestia and Garcia state that their present counsel did not receive Wilson's file about the matter until September 1, 2023, and after reviewing the documents, agreed that the portions of the state court judgments against "Travelers Insurance Company" should be set aside. [DE 68-1 at 1269; DE 68-2 at 1281]. The Jefferson Circuit Court entered an agreed order setting aside the default judgment and final judgment on September 20, 2023. [DE 68-8]. By that point, however, Travelers Indemnity had already filed the present lawsuit in federal court. [DE 1].

Moreover, even if it is true that La Bestia's counsel initially refused to set aside the default judgment,[4] this does not constitute abuse of process when counsel did "nothing more than carry out the process to its authorized conclusion." *Leggett*, 307 S.W.3d at 113. Waiting to set aside a judgment to review case materials and ensure that dismissal is proper does not constitute an "act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process." *Id.* at 114. That is, there is no evidence that La Bestia's act of waiting to set aside the judgment was aimed at an objective outside the scope of the proceedings. La Bestia did not, for example, use the judgment as a threat to "secure a monetary, proprietary, or other benefit" from Travelers Indemnity. *Grise v. Allen*, No. 5:11-195-KKC, 2016 WL 1261077, at *9 (E.D. Ky. Mar. 30, 2016), *aff'd*, 714 F. App'x 489 (6th Cir. 2017).

*Wiggins v. State Farm Fire and Casualty Company*, a case with facts related to this one, is instructive. 153 F. Supp. 2d 16 (D.D.C. 2001). In the underlying action, State Farm filed a lawsuit in the D.C. Superior Court against "James R. Wiggins," intending to sue "James R. Wiggins, *Jr.*" *Id.* at 19. Instead, however, the summons was delivered to the home of "James R. Wiggins, *Sr.*" *Id.* State Farm obtained a default judgment against "James R. Wiggins," and the unsatisfied judgment began to appear on credit reports for James R. Wiggins, Sr. *Id.* Accordingly, Wiggins, Sr. later brought an abuse of process claim against State Farm. *Id.* The court held that the plaintiff could not establish an abuse of process claim because "the entry of a default judgment is a regular, legally-obtained result of the judicial process" and State Farm did not engage in a "perversion of the judicial process" by obtaining the default judgment. *Id.* at 23. Similarly, in *Beecy v. Pucciarelli*, the plaintiffs, Mr. and Mrs. Beecy, brought an abuse of process claim against an attorney,

---

[4] La Bestia states that its new counsel did not receive Wilson's case materials until September 1, 2023 despite requesting them in February 2023. [DE 68-2 at 1280]. After reviewing the materials, new counsel realized that the default judgment was improper and La Bestia agreed to set it aside. [*Id.* at 1281].

Pucciarelli, who erroneously commenced a collection action against them on behalf of a client, Filene's. 441 N.E.2d 1035, 1037 (Mass. 1982). Pucciarelli believed that the plaintiffs were the owners of a Filene's charge account that was past due, when in fact the account was owned by another individual with the same last name. *Id.* at 1037. Although the Beecys notified Pucciarelli of the mistake, he proceeded to commence suit against them. *Id.* The court held that the abuse of process claim failed because there was no evidence the process was used to accomplish an ulterior purpose and "mere commencement of litigation to enforce a claim which the person commencing the litigation knows or should have known to be groundless" does not constitute abuse of process. *Id.* at 1040.

Here, without any evidence that the process was used to accomplish a purpose other than that for which it was designed, the abuse of process claim must fail. Even assuming that Wilson and La Bestia knew that Travelers Indemnity was an improper defendant and did not receive the summons, commencing groundless litigation and securing a default judgment does not amount to exploitation of the legal process for outside gain. Even viewing the evidence in the light most favorable to Travelers Indemnity, there are simply no facts in the record that suggest that La Bestia or Wilson had an ulterior motive or engaged in willful conduct not authorized by the process. Accordingly, no reasonable factfinder could conclude from the facts available in the record that La Bestia or Wilson committed abuse of process.

As a result, Travelers Indemnity's abuse of process claim fails. Accordingly, the Court **GRANTS** Wilson's motion for summary judgment on Count 1 of the second amended complaint.

C.    <u>La Bestia's Motion for Summary Judgment</u>

La Bestia Kentucky moves for summary judgment with regard to its third-party claims against Wilson—breach of contract (Count 1) and breach of professional obligations (Count 2).

[DE 68-1]. Because the Court has granted Wilson's motion for summary judgment on Count 1 of Travelers Indemnity's complaint, none of the underlying claims against La Bestia Kentucky remain. Nevertheless, La Bestia Kentucky argues that its third-party claims against Wilson are not wholly contingent on Travelers Indemnity prevailing on its underlying claim. [DE 72 at 1355]. La Bestia Kentucky states that it has suffered damages of attorney's fees paid to Wilson and incurred in this action "regardless of whether Travelers Indemnity somehow prevails in this action." [*Id.*]. Thus, La Bestia Kentucky ostensibly wishes for the Court to grant summary judgment on its third-party claims even though the Court has dismissed the underlying claim from which the third-party claim arose.

Third-party practice is governed by Federal Rule of Civil Procedure 14, which allows a third-party complaint to be served upon "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). The Sixth Circuit has stated that

> A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim. Correlatively, a defendant's claim against a third-party defendant *cannot simply be an independent or related claim, but must be based upon the original plaintiff's claim against the defendant.* Rule 14(a) does not allow a third-party complaint to be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim, because a third-party complaint *must be founded on a third party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant.*

*Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008) (emphasis added). Accordingly, a third-party complaint is "in the nature of an indemnity or contribution claim" and "it is rare that a court renders judgment in favor of the defendant or dismisses the underlying action but nonetheless chooses to address a third-party claim." *Id.* When an underlying

claim has been dismissed, a court has discretion to dismiss the third-party claims and "relegate the third-party plaintiff to a separate suit." *Id.* at 805–06.

> La Bestia's third-party complaint states:
>
> > should Travelers Indemnity be granted any relief in the case, at bar, due to the failure of Wilson to meet his [contractual and professional] obligations as counsel for La Bestia, La Bestia (i) is entitled to be fully indemnified by Wilson, (ii) is entitled to a refund of all attorneys' fees paid to Wilson, [and] (iii) is entitled to recover from Wilson its attorneys' fees and expenses incurred in connection with this action"

[DE 36 at 822–23]. La Bestia asserts that while item (i) is contingent upon Travelers Indemnity prevailing on its underlying claims, items (ii) and (iii) should persist regardless of whether Travelers Indemnity prevails. [DE 72 at 1355]. In other words, while La Bestia brought these claims under Rule 14 in an attempt to transfer its potential liability to Wilson, La Bestia now argues that it should be granted attorney's fees from Wilson's alleged malpractice and breach of contract independent of the outcome of Travelers Indemnity's original claim against La Bestia. This goes against both the language used in La Bestia's third-party complaint and Rule 14. Under both causes of action in its third-party complaint, La Bestia specifies that it is entitled to relief "[s]hould Travelers Indemnity be granted any relief in the case, at bar," DE 36 at 822–23], indicating that La Bestia was aware that third-party complaints are appropriate only when "the third party plaintiff is attempting to transfer liability for the plaintiff's claim against him." *Baker v. Pierce*, No. 85-5700, 1987 WL 36585, at *2 n.2 (6th Cir. Jan. 27, 1987). That is, La Bestia conditioned its request for relief from Wilson on the success of Travelers Indemnity's claim. Because the Court has granted summary judgment to Wilson on Count 1 of the second amended complaint, no claims remain against La Bestia Kentucky, and Wilson can have no liability to La Bestia Kentucky for those claims. *See Mitchell v. Carhartt, Inc.*, No. 4:14-CV-00057-JHM, 2016 WL 1532255, at *1

(W.D. Ky. Apr. 15, 2016) ("[I]f a defendant has no liability to a plaintiff, then a third party defendant has no liability to that defendant.").

Even if La Bestia had not used this conditional language and had asserted these claims independently, it would not be proper for the Court to consider them after dismissing Travelers Indemnity's underlying claim when Rule 14 does not allow a third-party complaint to be founded on a defendant's independent cause of action, "even though arising out of the same occurrence underlying plaintiff's claims." *Am. Zurich Ins. Co.*, 512 F.3d at 805. Thus, to the extent that La Bestia asserts independent causes of action, these claims were not appropriately brought in a third-party complaint. Moreover, allowing La Bestia to continue to prosecute its third-party complaint after the underlying action has been dismissed would not further Rule 14's purpose of preventing a "situation where a defendant has been adjudicated liable and then must bring a totally new action against a third party who may be liable to him for all or part of the original plaintiff's claim against him." *Am. Zurich Ins. Co.*, 512 F.3d at 805 (quoting 6 Wright, Miller, Kane, Fed. Prac. & Proc.: Civ. 2d § 1441 at 289–90 (2d ed. 1990)).

Accordingly, the Court exercises its discretion to dismiss La Bestia's third-party claims and "relegate the third-party plaintiff to a separate suit." *Am. Zurich Ins. Co.*, 512 F.3d at 805–06. As a result, Counts 1 and 2 of La Bestia's third-party complaint will be **DISMISSED WITHOUT PREJUDICE**, and, with no claims remaining, La Bestia's motion for summary judgment will be **DENIED AS MOOT**.

## V.    CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Travelers Indemnity's motion for leave to file a sur-reply [DE 70] is **DENIED.**

(2)  Wilson's motion for summary judgment on Count 1 [DE 65] is **GRANTED.**

(3)  Counts 1 and 2 of La Bestia's third-party complaint [DE 36] are **DISMISSED WITHOUT PREJUDICE**.

(4)  La Bestia's motion for partial summary judgment [DE 68] is **DENIED AS MOOT.**

(5)  Within **21 days** of this order, Plaintiffs **shall file a Motion for Default Judgment** with respect to the claim against La Bestia Virginia in accordance with Fed. R. Civ. P. 55(b)(2).

Rebecca Grady Jennings, District Judge

United States District Court

December 1, 2025